## IN RE ULRIC PALIN *et al* FOR AN OPINION.

### JUNE 11, 1906.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Reservations. Rent charges.*

X. executed a deed of certain realty to Y., her husband joining therein, subject to the following provisions: "subject however to several mortgages, to the amount of $7,900, which the grantee herein hereby assumes and promises to pay in full," and also "subject to the occupancy of a tenement in above described premises by said grantors during their natural lives, free of all rents and charges for the use of same and also the payment of $7 per week, to be paid every Monday of each and every week, during their natural lives, said amount to be paid to said grantors herein by said grantee. And also should said grantors herein die during the minority of their children, the payment of the above amount per week to be continued until they become of age respectively. After the death of said grantors, the above named (children) if they are still minors, may continue to occupy said tenement free of rent, until they become of age, and the above charges are hereby created a lien upon the above conveyed premises, and the said grantee covenants and agrees, his heirs, executors, and administrators and assigns, to fully perform said charges."

After the conveyance to Y. he mortgaged the estate to Z. for $500, subject to prior mortgages and the agreements in the deed to Y.

Y. deceased; the first mortgagee foreclosed, there being a surplus of $2,723.40 from the sale. X. and her husband were both dead, and two of the children were still minors.

On a question as to the disposition of the surplus:—

*Held*, that, while the reservation of the rent charge was good as to the original grantors, and might have been enforced as against Y. or anyone purchasing from him subject to this charge, it was void as to the children, who were not owners of nor interested in the estate, nor parties to the deed, and no lien survived to the fund.

*Quære;* if the claim might be enforced against Y. or his estate, as accruing under a binding agreement, as a part of the consideration of the conveyance to him.

(2) *Reservations.*

*Held*, further, that the provision that the children might continue in the occupancy of the tenement free of rent after the decease of grantors was also an attempted reservation of a part of the estate to strangers to the title, and was void.

(3) *Rent charges. Liens.*

*Held*, further, that whatever liens Y. attempted to create ceased as liens upon the real estate upon the passage of the title under the prior mortgage; and as there was no provision for such contingency, a claim for rental value could not be substituted as a lien against the fund.

*Held*, further, that Z. as mortgagee was entitled to a lien upon the fund.

PETITION IN EQUITY, stating a case to the court for an opinion under provisions of section 323 of the court and practice act.

PARKHURST, J. This is a petition in equity, stating a case to the court for an opinion under the provisions of section 323 of the court and practice act.

The facts as they appear in the petition to the court are as follows: Josephine Lenoue, of Central Falls, in the county of Providence and State of Rhode Island, being the owner of certain realty in said city, made and executed, on June 25, 1903, a quitclaim deed of the same to one Joseph Chartier. Her husband, Gilbert Lenoue, joined with her in said deed as one of the grantors. Said conveyance was made subject to the following provisions, which are set out in said deed, immediately following the description of the land, as follows: "subject however to several mortgages aggregating to the amount of $7,900 which the grantee herein hereby assumes and promises to pay in full;" and also "subject to the occupancy of a tenement in above described premises by said grantors during their natural lives, free of all rents and charges for the use of same and also the payment of $7 per week to be paid every Monday

of each and every week during their natural lives, said amount to be paid to said grantors herein by said grantee. And also should said grantors herein die during the minority of their children, Alice, Albert and Hermine Lenoue, the payment of the above amount, to wit, $7 per week, to be continued until they become of age respectively: After the death of said grantors, the above named Alice, Albert and Hermine, if they are still minors, may continue to occupy said tenement free of rent, until they become of age; and the above several charges are hereby created a lien upon the above conveyed premises and the said grantee covenants and agrees, his heirs, executors and administrators and assigns to fully perform the said charges." After the conveyance to Chartier, he, on November 3, 1904, mortgaged the estate to Emma S. Blanchard for $500. This mortgage was subject to the prior mortgages, which were held by the Providence County Savings Bank, and to the provisions and agreements mentioned in the deed of Lenoue to him. Chartier having died, and the interest on the bank mortgages not being paid, the bank foreclosed its mortgages and sold the property, and now holds the surplus from the sale, amounting to $2,723.40. As Gilbert and Josephine Lenoue are now both dead and two of the children mentioned in the deed are still under age, the questions that have arisen among the parties in interest are:

1. Are the minors entitled to receive the annuity provided for in said deed until they become of age, out of the surplus derived from said sale?

2. Are they entitled to receive out of said surplus an amount equivalent to the rental value of the tenement occupied by them at the time of said sale, the same to be paid during their minority?

3. If so, do these payments take precedence of the Blanchard mortgage in the payment of the same?

We think all these questions must be answered in the negative.

1. As to the reservation of a rent charge of $7.00 per week: We think such a reservation was good as to the original grantors Josephine and Gilbert Lenoue, as a part of the consideration

for the conveyance to Chartier; and might have been enforced by them or either of them up to the death of the survivor of them as against Chartier or any one purchasing from him subject to this charge; but the further attempted reservation of this charge to their three children named in the deed, who were not owners of nor interested in the estate conveyed and were not parties to the deed, we think is void under the general principles laid down in Taylor's Landlord and Tenant, section 155, as follows: "(Since rent, as such, can be reserved in favor only of one having a legal estate in the land), if a special reservation is made, care must be taken that it be made to him from whom the estate in the land is derived. Thus, if a lessor reserves rent to himself and wife, although this is good for his life, yet after his death, the wife, being a stranger, cannot have the rent; for the same reason, if it be reserved, not to the lessor, but to the *heir*, it will be bad." 2 Rol. Abr. 447, 1, 33; 8 Co. 70; Co. Lit. 99, b; 213, b. See also Tiedeman on Real Property, 3d ed. § 608; 3 Wash. on Real Property, 6th ed. § 2353 *et seq*; Shep. Touch. 80, and cases *infra*.

We think, therefore, that the attempted reservation of the rent charge for the benefit of the minor children of the Lenoues was void so far as it attempted to create any lien upon the real estate, and consequently that no lien survives as to the fund now in question. In this decision we do not intend to be understood as deciding whether or not this claim might be enforced against Chartier so long as he remained in possession under his deed, or against Chartier's estate as accruing under a valid and binding agreement entered into by Chartier as a part of the consideration of the conveyance to him; but we intend to decide only that it does not entitle these parties to a specific lien upon the fund in question.

2. As to the claim for the rental value of the tenement attempted to be reserved to these minors, we are of the opinion that this was also an attempted reservation of a substantial part of the estate to strangers to the title, and was void for the same reasons and upon the same principles as set forth in *Young, Petr.*, 11 R. I. 636, *Littlefield* v. *Mott*, 14 R. I. 288, and cases cited.

Furthermore, it will be noted that the mortgages under which the foreclosure was had, and under which title has since passed to other parties, were upon the property at the time Chartier took the deed and attempted to create the liens here claimed, so that it is plain that Chartier's title and all his agreements, of whatever character, were subject to those mortgages; so that whatever liens he attempted to create by the terms of the deed he accepted ceased as liens upon the real estate at the moment of the passage of the title under the prior mortgages.

The actual right of occupancy ceased as soon as the purchaser under the mortgages acquired his title to the property; and as there was no alternative provision in the deed to provide for this contingency, we see no way in which we can now substitute a claim for rental value against this fund. The right of occupancy was subject to the prior mortgages and was swept away by the foreclosure. We think this claim, if any can be enforced, must be against the estate of Chartier, but can not be enforced as a lien against the specific fund in question.

3. In view of these considerations, we are of the opinion that Emma S. Blanchard, as mortgagee, under the mortgage above set forth, is entitled to a lien upon the fund for the full payment of the amount thereof with interest, according to the terms of said mortgage; and that the children of Gilbert and Josephine Lenoue are not entitled to any lien upon said fund.

*William M. P. Bowen,* for Emma S. Blanchard.

*John A. Tillinghast,* for Prov. County Savings Bank.

*Noe L. Nadeau,* for Ulric Palin, guardian and administrator.